**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| FALI REHAB EQUIPMENT, LLC<br><br>Plaintiff,<br><br>v.<br><br>210 INNOVATION, LLC<br><br>Defendant. | Civil Action No.<br><br><br><br><br><br>AUGUST 19, 2026 |

## COMPLAINT

The plaintiff, FALI Rehab Equipment, LLC ("FALI"), for its complaint against the defendant, 210 Innovation, LLC ("210 Innovation" or "210 Innovations"), alleges as follows:

## THE PARTIES

1. FALI was originally organized as a limited liability company under the laws of the State of Connecticut on or about April 24, 2019, and maintains a principal place of business in Connecticut.

2. Since 2019, FALI has been in the business of creating and designing weighted walker attachment systems for use in physical therapy and rehabilitation.

3. FALI is the owner, by assignment, of U.S. Pat. No. 11,224,779 (the "'779 Patent"). A copy of the '779 Patent is attached as Exhibit A.

4. 210 Innovations was organized as a limited liability company under the laws of the State of Connecticut on or about February 13, 1997, and maintains a principal place business in Connecticut.

5. Since 1997, 210 Innovations has been in the business of manufacturing fall prevention products and systems.

## JURISDICTION

6. This is an action for Patent Infringement; for Breach of Contract; for Civil Theft under C.G.S. § 52-564; for Conversion; and for Unfair Competition under C.G.S. § 42-110b.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338.

8. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal claims under Article III of the U.S. Constitution.

9. Venue is proper under 28 U.S.C. § 1391 and § 1400.

10. The Court has personal jurisdiction over 210 Innovations because it is a Connecticut limited liability company, it maintains a principal place of business in Connecticut, it transacts business in Connecticut, and it engaged in wrongful acts within the State of Connecticut.

## FACTUAL BACKGROUND

11. On or about September 10, 2018, Provisional Application No. 62/729,100, entitled "Weighted Walker Attachment System," was filed with the United States Patent and Trademark Office (the "First Provisional Application").

12. On or about May 16, 2019, Provisional Application No. 62/848,677, entitled "Weighted Walker Attachment System," was filed with the United States Patent and Trademark Office (the "Second Provisional Application").

13. On or about July 30, 2019, Non-Provisional Application No. 16/525,840, entitled "Weighted Walker Attachment System," was filed claiming the benefit of the First Provisional Application and the Second Provisional Application (the "'840 Application").

14. On or about January 18, 2022, the '840 Application issued as the '779 Patent.

15. On or about November 9, 2024, FALI engaged in negotiations with 210 Innovations to grant a patent license directed to the manufacture, assembly, marketing, and sale of a weighted walker attachment system covered by the '779 Patent (the "Product").

16. The Product allows therapists and patients alike to adjust the weight of a walker device for therapeutic and rehabilitation purposes.

17. The Product addresses several needs in the fields of physical therapy and rehabilitation, including but not limited to a customizable rehabilitation regimen that easily changes the weights on a walker device, an easily mounted attachment system for the weights, an easily removable attachment system for the weights, and improving the utility of walker devices.

18. In February 2025, FALI and 210 Innovations created design drawings for an injection mold necessary to manufacture parts of the Product (the "Mold"), wherein the design drawings were wholly paid for by FALI. A copy of the design drawings for the Mold and the Mold itself are currently in the possession of 210 Innovations.

19. On or about April 12, 2025, FALI and 210 Innovations entered into an agreement that grants 210 Innovations an exclusive license to manufacture, assemble, market, and sell the Product (the "Agreement"), which was signed by James Ritche for 210 Innovations, and Sarah Ali and Nicole Fellows for FALI. A copy of the Agreement is attached as Exhibit B.

20. Upon information and belief, at the time the Agreement was executed, 210 Innovations was co-owned by Jamies Ritchie and James Marquis.

21. In the Agreement, FALI and 210 Innovations agreed to split the profits of the Product 50/50, wherein profit is the gross revenue minus direct costs of manufacturing, assembly, marketing, and distribution.

22. The Agreement also provides that if 210 Innovations undergoes a change of ownership, arrangement for the continued use of the patent license may be renegotiated. If the new owner decides not to renegotiate a new agreement, then "all parts, sourcing, cost data and relevant information will be provided" to FALI.

23. The Agreement further provides that it may only be terminated upon 60 days written notice of a material breach of the Agreement.

24. Upon termination of the Agreement, 210 Innovations is obligated to return all parts, sourcing data, cost data, and relevant product information to FALI and the Mold will be returned to FALI when 210 Innovations recovers its capital expenses.

25. Upon information and belief, on or about December 2025, James Ritchie purchased the ownership share of his partner James Marquis, thereby changing the ownership in 210 Innovations so that James Ritchie is the sole owner of 210 Innovations.

26. During the term of the Agreement, 210 Innovations organized and visited a third party influencer to allegedly discuss the Product.

27. 210 Innovations misrepresented to FALI the nature and subject matter of its meeting with the influencer by representing that the meeting concerned the Product and its marketing and sale, while failing to disclose that the meeting also involved other products that were not covered by the Agreement.

28. 210 Innovations further misrepresented to FALI that the influencer's reaction to the Product was negative and that the meeting gave rise to concerns regarding the marketing and sale of the Product. In fact, the negative aspects of the meeting instead related to products outside the scope of the Agreement.

29. During the term of the Agreement, 210 Innovations also misrepresented the total number of Products that 210 Innovations intended to sell and the number of Products that were ready for sale.

30. On or about February 18, 2026, 210 Innovations provided a proposed contract amendment to the Agreement (the "Amendment"), representing that the only change to the Agreement was that payment will be made under a 75/25 net sales structures instead of a 50/50 profits structure. 210 Innovations sought execution within 48 hours.

31. 210 Innovations, however, misrepresented that the Amendment only changed the payment structure, as the Amendment also proposed the following changes:

a. An intra-family change in ownership does not constitute a change in ownership as currently defined in the Agreement;

b. 210 Innovations must recover all capital expenses before the payment structure goes into effect; and

c. An assignment of all ownership interest in the '779 Patent to 210 Innovations.

32. In addition to the above, 210 Innovations repeatedly misrepresented the amount of capital expenses incurred in the manufacture and sale of the Product both during the term of the Agreement and following its termination.

33. On or about April 13, 2026, 210 Innovations informed FALI that it was terminating the Agreement without cause or without stating that FALI materially breached the Agreement.

34. While it terminated and thus materially breached the Agreement, 210 Innovations nevertheless failed to transfer all parts, sourcing data, cost data, and relevant product information to FALI, cease all manufacturing, marketing, assembly, and sale of the Product, as required by the Agreement.

35. 210 Innovations instead has wrongfully continued in the commercial exploitation of the Product in violation of the Agreement and the Patent Act.

36. 210 Innovations has also not transferred all parts, sourcing data, cost data, and relevant product information to FALI in violation of the Agreement.

37. 210 Innovations engaged in the above acts with knowledge of the limited life of the '779 Patent and its impact on the commercial success of any products made under the '779 Patent.

38. This lawsuit followed.

**COUNT ONE (Patent Infringement)**

39. Paragraphs 1 through 38 are hereby incorporated as if fully stated herein.

40. The '779 Patent contains eleven (11) apparatus claims directed to a weighted walker attachment system.

41. Despite acknowledgement that the Products are covered by the scope of the '779 Patent, 210 Innovations terminated the Agreement without cause and without identifying any material breach on the part of FALI.

42. Despite termination of the Agreement, 210 Innovations has wrongly continued to offer to sell and sell the formerly licensed Products and thereby has infringed at least claim 1 of the '779 Patent.

43. In particular, the Product has (1) a base with first attachment means for attaching said base to the at least one elongated frame member, said base having a first weight value; and (2) one or more weighted members removably attachable to the base with second attachment means, whereby each of said one or more weighted members has a weight value that is the same or different from the first weight value; wherein each of the one or more weighted members is

configured to be attached to and detached from the base, wherein the base remains engaged with the at least one elongated frame member.

44. In accordance with 35 U.S.C. § 283, the Court should enjoin 210 Innovations from any further infringement of the '779 Patent.

45. The Court should also award damages to FALI adequate to compensate it for 210 Innovations' infringement of the '779 Patent as provided in 35 U.S.C. § 284, but in no event should such damages be less than a reasonable royalty for 210 Innovations' use of the patented invention, plus interest and costs.

46. 210 Innovations' infringement is also so wanton, knowing and deliberate that it merits the imposition of increased damages under 35 U.S.C. § 284.

47. This is an exceptional case, justifying an award of reasonable attorney fees to FALI in accordance with 35 U.S.C. § 285.

**COUNT TWO (Breach of Contract)**

48. Paragraphs 1 through 47 are hereby incorporated as if fully stated herein.

49. As a condition of the Agreement, FALI and 210 Innovations agreed to Section 3. "Intellectual Property Reversion," which described a change in the Agreement should there ever be a change of ownership, whether through sale, merger, acquisition, or other means.

50. James Ritchie purchased the ownership stake in 210 Innovations from James Marquis, thereby changing the ownership in 210 Innovations from two joint owners to a sole owner.

51. 210 Innovations breached the Agreement by, *inter alia*, (1) representing that there was no change in ownership, (2) failing to renegotiate in good faith for the continued use of FALI's intellectual property, and/or (3) failing to discontinue the Agreement.

52. 210 Innovations' breaches have caused substantial economic harm to FALI, entitling it to a recovery of damages.

53. 210 Innovations' wrongful acts, as detailed herein, reveal a reckless indifference to the rights and interests of FALI and the rule of law.

54. FALI is thus entitled to an award of damages that properly, fairly and adequately compensates it for its losses, an award that properly, fairly and adequately disgorges 210 Innovations of its ill-gotten gains, and an award of punitive or exemplary damages that properly, fairly and adequately punishes 210 Innovations for its reckless and willful conduct.

**COUNT THREE (Civil Theft)**

55. Paragraphs 1 through 54 are hereby incorporated as if fully stated herein.

56. 210 Innovations has engaged in the following wrongful acts:

a. Maintaining possession of design drawings of the Mold; and

b. Maintaining possession of all parts used for the Product.

57. Each such act constitutes larceny by false pretenses and/or by false promises under Connecticut General Statutes § 53a-119(2) and § 53a-119(3), and/or larceny in the first degree under Connecticut General Statutes § 53a-122.

58. As a result of 210 Innovations' illegal acts, FALI has been damaged and is entitled to an award of treble damages against pursuant to Connecticut General Statutes § 52-564.

**COUNT FOUR (Conversion)**

59. Paragraphs 1 through 58 are hereby incorporated as if fully stated herein.

60. 210 Innovations' acts, at a minimum, constitute conversion.

61. FALI owned or was obligated to receive all such property, and without authorization, 210 Innovations assumed and exercised possession, ownership and/or control of that property.

62. 210 Innovations' acts show a willful, wanton, malicious, and/or reckless indifference to the rights of FALI and the rule of law.

63. FALI is thus entitled to an award of damages that properly, fairly and adequately compensates it for its losses, and an award of punitive or exemplary damage that properly, fairly and adequately punishes 210 Innovations for her reckless and willful conduct.

**COUNT FIVE (CUTPA)**

64. Paragraphs 1 through 63 are hereby incorporated as if fully stated herein.

65. As detailed herein, 210 Innovations has engaged in unfair methods of competition and have committed unfair and deceptive acts in the conduct of trade and commerce, all in violation of Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110b(a).

66. Specifically, 210 Innovations has engaged in following unfair and deceptive acts:

a. Misrepresenting that the terms of the Agreement did not change following the change in ownership in 210 Innovations;

b. Attempting to obtain full ownership of the '779 Patent under the Amendment while representing that the Amendment only changed the payment structure from 50/50 profits to 75/25 net sales;

c. Misrepresenting the capital expenses incurred by 210 Innovations;

d. Misrepresenting that a meeting with a third-party influencer was solely to discuss the Product and that the third-party influencer viewed the Product poorly;

e. Misrepresenting that 210 Innovation had all of the parts necessary to sell the Product; and

f. Failing to return all parts, sourcing data, cost data, and relevant product information to FALI.

67. FALI has suffered an ascertainable loss as a result of 210 Innovations' wrongful conduct.

68. As a result of 210 Innovations' conduct, FALI has suffered, and will continue to suffer, substantial harm, entitling it to the recovery of damages, punitive damages, costs, attorneys' fees and injunctive relief under C.G.S. § 42-110g.

## PRAYER FOR RELIEF

WHEREFORE, FALI seeks:

1. Money Damages;
2. Treble Damages;
3. Punitive Damages;
4. Reasonable Attorney's Fees;
5. Interest and Costs;
6. Injunctive relief; and
7. Any other legal or equitable relief this Court deems just and proper.

PLAINTIFF FALI REHAB EQUIPMENT, LLC

*/s/ Robert L. Bertekap III*

John R. Horvack, Jr.
Fed. Bar ct12926
Robert L. Bertekap III
Fed. Bar ct32077
CARMODY TORRANCE SANDAK & HENNESSEY LLP
195 Church Street, 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Phone: (203) 777-5501
Fax: (203) 784-3199
Firm Juris No. 012592
jhorvackjr@carmodylaw.com
rbertekap@carmodylaw.com